IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| L.T., by her guardian, CAJUN SNORTON, as the surviving child of NICHOLAS THOMAS, and CAJUN SNORTON, as administrator of the estate of NICHOLAS THOMAS,<br><br>        Plaintiffs,<br><br>v.<br><br>SMYRNA POLICE LIEUTENANT KENNETH OWENS, in his individual capacity, and THE CITY OF SMYRNA,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>1:17-cv-01036-WMR |

## BRIEF IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT WILLIAM HARMENING

Come now, the City of Smyrna, Georgia and Kenneth Owens, named as defendants in the above-referenced action, pursuant to Rule 702 of the FEDERAL RULES OF EVIDENCE and Local Rule 7.1, and hereby file their brief in support of their *Daubert* motion to exclude the expert opinions and testimony of plaintiffs' expert witness William Harmening, showing this Honorable Court the following:

## I.   __INTRODUCTION__

The above-captioned civil action arises out of the objectively reasonable use of deadly force by Smyrna Police Officer Defendant Kenneth Owens ("Owens"), while he was employed by the City of Smyrna, Georgia ("Smyrna"), against plaintiff's decedent Nicholas Thomas ("Thomas") on March 24, 2015.  At the time of the shooting, Thomas was driving a vehicle actively attempting to avoid a lawful arrest endangering the lives of Owens and the other four (4) other law enforcement officers (two Cobb County Officers and two Smyrna Officers) who were chasing his vehicle on foot in a Goodyear parking lot.  In support of their claims against Owens and Smyrna, plaintiffs have identified William Harmening as a purported expert witness from whom they seek to solicit testimony to support their claims against Owens and Smyrna.  In this regard, they offer Mr. Harmening "to analyze the evidence in this case to determine if the actions taken by the officers, especially Officer Owens' use of deadly force, were reasonable in the context of accepted police training and practice."[1]

Harmening offers his unqualified expert opinion testimony that "the use of deadly force by Sergeant Owens, resulting in the death of Nicholas Thomas, was

---

[1] (Doc. 66-11, p. 6).

neither justified nor reasonable under the circumstances," as well as his equally unqualified opinions relating to Smyrna's decision to hire Owens despite his purported firearms disqualification.[2]  Harmening has been deposed by defense counsel and his deposition is being filed contemporaneously herewith.

The defendants oppose the admissibility of Mr. Harmening's opinions and/or testimony to support plaintiffs' opposition to these defendants' pending motion for summary judgment or at trial because he is not qualified to offer the opinions he seeks to offer as a purported expert in police practices, the use of deadly force, interpretation of video footage or with regard to a Georgia police department's hiring practices, and because the opinions he seeks to offer fail to satisfy the requirements set forth in Rule 702 of the Federal Rules of Evidence.

## II.   MR. HARMENING'S BACKGROUND AND EXPERIENCE

Mr. Harmening holds an associate's, bachelor's, and master's degree in psychology, which degrees he obtained in 1980, 1983, and 1994, respectively.[3] Mr. Harmening has taught classes in forensic psychology, criminology, and crisis

---

[2] (Doc. 66-11, p. 16; Doc. 66-12, p. 6).

[3] (Exh. A – Deposition of William Harmening taken on July 11, 2018 ("Harmening Depo.") 65:13 to 66:23; Exh. B – Harmening Depo. Exh. 3 (CV)).

intervention to undergraduate psychology and sociology students enrolled in a certificate program at Washington University in St. Louis since 2014.[4]

For the last twenty-five (25) years, Mr. Harmening has been employed as a Chief Special Agent with the Illinois Securities Department where he is responsible for investigating allegations of investment fraud within the State of Illinois.[5]   Mr. Harmening admits that his experience investigating investment fraud in the State of Illinois provides him with no relevant law enforcement experience or expertise relating to any of the issues in the instant case.[6]

Mr. Harmening's experience performing routine patrol duties as a uniformed officer is limited to 1981-1984 and 1990-1993, when he was employed full time as a deputy and chief deputy, respectively, at the Menard County Sheriff's Office in Illinois, while he was simultaneously earning his bachelor's and master's degrees in psychology.[7] In contrast to Smyrna, Menard County is a small rural county with a population of approximately 10,000 people; the

---

[4] (Exh. A – Harmening Depo. 8:19 to 9:25).

[5] (Exh. A – Harmening Depo. 7:17 to 8:18).

[6] (Exh. A – Harmening Depo. 8:6-15).

[7] (Exh. A – Harmening Depo. 10:1 to 11:9).

Sheriff's Office, as the only law enforcement agency in the county, was responsible for overseeing the county jail, courtroom security, and some patrol, employing approximately 20-30 sheriff's deputies and correctional officers.[8] There was only one officer-involved shooting which occurred in Menard County while Harmening was employed at the Sheriff's Office.[9] Harmening never fired his weapon in the line of duty,[10] and never investigated any officer-involved shootings while he was employed as a law enforcement officer.[11]

Other than the standard law enforcement education and training Mr. Harmening received in the State of Illinois while he was employed as a deputy with the Menard County Sheriff's Office from 1981 through 1993, and the law enforcement training he received in connection with his current employment in law enforcement investigating investment fraud, Mr. Harmening has received no other law enforcement training or education with regard to an officer's use of

---

[8] (Exh. A – Harmening Depo. 11:3-9, 14:14 to 15:12).

[9] (Exh. A – Harmening Depo. 15:13 to 16:23).

[10] (Exh. A – Harmening Depo. 69:13-14).

[11] (Exh. C – Deposition of William Harmening taken on September 10, 2018 in *Miguel Gonzalez v. Board of Commissioners of County of Bernalillo, New Mexico, et. al*, Case No. 18-00125, United States District Court for the District of New Mexico ("NM Depo.") 82:7-15).

force and/or deadly force under the tense and quickly evolving circumstances Owens confronted at the Goodyear on the date of the incident.[12] The only publications authored by Mr. Harmening related to the use of deadly force at best provide a general overview and are written from Harmening's academic perspective and experience in psychology, not law enforcement.[13]

Harmening has never been certified by Georgia POST as a law enforcement officer, has never received any law enforcement training or education from Georgia POST, and has never been involved in the hiring or firing of any police officers in Georgia.[14] Harmening's only experience in the hiring of routine patrol officers is limited to the three years he was employed at the Menard County Sheriff's Office from 1990 to 1993.[15]

Mr. Harmening offers opinions in this case regarding a "standard of care" positing any use of deadly force against any moving vehicle is objectively

---

[12] (Exh. A – Harmening Depo. 11:10 to 14:13).

[13] (Exh. C – NM Depo. 23:25 to 24:3; Exh. A – Harmening Depo. 61:8-22).

[14] (Exh. A – Harmening Depo. 31:6-14).

[15] (Exh. A – Harmening Depo. 121:10-12).

unreasonable as a matter of law; however, as he admitted in another case,[16] other

than applicable state and federal law, namely, the Fourth Amendment, there

exists no other applicable governing standard of care that an officer must adhere

to in connection with the use of deadly force: "[W]hen they take an action or they

use force they're going to be held to the standards of case law and the Fourth

Amendment."[17]  Harmening further explained that because there exists

"variance" between police practices, procedures, and training across the nation,

he was not aware of a single mandatory standard, policy, or procedure relating

to the performance of law enforcement duties that any law enforcement agency

in the country is required to adopt or otherwise comply with.[18]  Harmening

---

[16] *Miguel Gonzalez v. Board of Commissioners of County of Bernalillo, New Mexico, et. al*, Case No. 18-00125, United States District Court for the District of New Mexico.

[17] (Exh. C – NM Depo. 9:25 to 12:5).

[18] (Exh. C – NM Depo. 12:6 to 13:18) ("I think there are standards put forth by CALEA if a police department wishes to be accredited by CALEA. I think those are the only national standards that I'm aware of. There are certainly national model policies put out by International Chiefs and other groups but a police department is certainly not obligated to adopt those.").

further admitted that there exists no standard firearms qualification that an officer must satisfy before being hired to serve as a law enforcement officer.[19]

Although Harmening has offered his written expert opinions in over 40 civil cases involving the use of force since 2015, as of the date of his deposition in this case in July 2018, not a single court has deemed Mr. Harmening qualified as an expert witness in this regard.[20]

## III.   ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and

---

[19] (Exh. C – NM Depo. 14:8-15 ("Q. So how would I find out, for instance, the standard firearms qualification which law enforcement officers throughout this country must meet in order to serve the law enforcement? A. Well, you're asking about a specific example. And I would say for firearms qualification there is no standard.").

[20] (Doc. 66-11, p. 4; Exh. A – Harmening Depo. 67:10-16).

> (d) the expert has reliably applied the principles and
> methods to the facts of the case.[21]

In the Eleventh Circuit, district courts must conduct "a rigorous three-part inquiry" to determine the admissibility of expert evidence, and may admit such evidence if any only if: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."[22] The proponent of the expert opinion carries the "substantial burden" of establishing all three requirements — qualification, reliability, and helpfulness — by a preponderance of the evidence.[23] As set forth more fully below, because Mr. Harmening does not meet any of these three requirements, his opinions must be excluded.

---

[21] Fed. R. Evid. 702.

[22] *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.,* 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

[23] *Id.*; *Hughes v. Kia Motors Corp.,* 766 F.3d 1317, 1329 (11th Cir. 2014); *Frazier*, 387 F.3d at 1260 ("While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them.").

A. **<u>Harmening is not qualified to provide expert opinions relating to law enforcement practices or procedures.</u>**

Mr. Harmening's opinions must be excluded because he lacks the requisite law enforcement knowledge, skill, experience, training, and education to provide expert testimony with regard to police practices, the use of force, or hiring decisions of a Georgia law enforcement agency. According to Harmening's report, his qualifications to provide expert witness testimony in the field of police practices and use of force derives from two sources: "one occupational, and the other academic."[24]

Mr. Harmening's academic knowledge, skill, training, and education are limited to the field of psychology, not police practices. Although Harmening's academic experience in psychology may at times refer to an officer's use of force from the perspective of psychology, "[a] witness may not qualify—through reading and preparation—as an expert in 'an entirely different field or discipline.'"[25] The expert must "stay within the reasonable confines of his subject area," and "many courts have excluded testimony when they determine that the

---

[24] (Doc. 66-11, p. 3).

[25] *Trilink Saw Chain, LLC v. Blount, Inc.,* 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (internal citation omitted).

witness is testifying to an area outside of—but related to—[his] expertise."[26] Simply put, Harmening's academic background in psychology does not qualify him to testify as to police practices, use of force, or a law enforcement agency's hiring decisions.

Nor does Harmening's experience as a law enforcement officer in Illinois qualify him as an expert witness with regard to these matters. Although Harmening has approximately 36 years of total law enforcement experience, 25 of these years were spent investigating investment fraud in Illinois, which experience Harmening readily admits has no relevance to any issue presented in this case. Moreover, while Harmening was employed as a routine patrol officer in Illinois, he admits that only one officer-involved shooting occurred, that he never investigated an officer-involved shooting, that he never fired his weapon in the line of duty, and that he was involved in the hiring of routine patrol officers for only three (3) years during that time. Because Mr. Harmening is not qualified to provide competent expert testimony with regard to police practices, the use of force, or hiring practices in this case, the opinions he offers in this regard must be excluded.

---

[26] *Id.* (citing cases).

**B.** **Harmening's speculative opinions must be excluded because they are patently unreliable.**

Even assuming that Harmening was qualified to testify as an expert in this case, the opinions he offers must nevertheless be excluded because they are not sufficiently reliable to authorize presentation to a jury.[27] When an expert's "factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'"[28] As the United States Supreme Court has stated, "'knowledge' connotes more than subjective belief or unsupported speculation."[29] "Whether an expert's testimony is reliable depends on the particular facts and circumstances of the particular case."[30]

---

[27] *Wilson v. Taser Intern., Inc.,* 303 Fed. Appx. 708, 711 (11th Cir. 2008).

[28] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148 (1999).

[29] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590 (1993); *United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir. 1988) ("Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony.").

[30] The Eleventh Circuit "look[s] to a number of factors, including (1) whether the methodology can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential rate of error of the methodology employed, and (4) whether the methodology is

"Since [Harmening] [is] relying solely or primarily on his experience, it [is] the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case."[31] The district court may not simply "'tak[e] the expert's word for it.'"[32] "If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong."[33] Thus, a trial court must exclude expert testimony that is "imprecise and unspecific," or whose factual basis is not adequately explained.[34]

---

generally accepted. This list of factors is not meant to be exhaustive, nor must each factor be present in a given case." *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328–29 (11th Cir. 2014) (citing *Daubert*, 509 U.S. at 593–94).

[31] *Hughes*, 766 F.3d at 1329.

[32] *Edwards v. Shanley*, 580 Fed. Appx. 816, 823, (11th Cir. 2014) (internal citations omitted).

[33] *Frazier*, 387 F.3d at 1261.

[34] *Id.* at 1266 (finding no abuse of discretion when the trial court concluded that an "imprecise and unspecific" expert opinion would not assist the jury, and observing that the expert's "imprecise opinion easily could serve to confuse the jury, and might well have misled it").

Harmening offers "precious little in the way of a reliable foundation or basis for his opinion," and more specifically, offers no indication whatsoever that he used any law enforcement expertise to reach his conclusions, much less identify the methodology by which he applied any such expertise to conclude that Owens' use of deadly force was objectively unreasonable under the circumstances confronting Owens.[35] For example, according to Harmening, because "Owens fired three times as the vehicle passed by him," and because "[t]he second shot, which was fired after the vehicle's front end had already passed Owens' location, struck Thomas and caused his death," Harmening opines that "[t]he only plausible reason for Owens resorting too [sic] deadly force when he did was his anger at Thomas for refusing to stop the vehicle."[36] Harmening identifies no law enforcement expertise on which he relied to reach this conclusion, nor does Harmening identify any evidence in the record to support his speculative assumption in this regard. Likewise, Harmening's opinions regarding events that were not captured by video, including but not limited to the locations of the officers relative to Thomas' vehicle at the time

---

[35] *Hughes*, 766 F.3d at 1329.

[36] (Doc. 66-11, p. 16).

deadly force was used, are entirely speculative and not supported by any evidence in the record.

Harmening's opinions must also be excluded to the extent they are predicated "on an assumption that [is] belied by the evidence."[37] For example, Harmening opines that "Thomas neither drove erratically nor recklessly as he moved back and forth, and at no time he did attempt to strike the officers with the vehicle," and that Owens "made the decision to use deadly force at a time when Thomas was not a threat."[38] Harmening's speculative and unsupported opinions in this regard are directly contradicted by uncontroverted deposition testimony and video evidence in the record, which speaks for itself as to the manner by which Thomas was driving as well as the immediacy of the resulting threat of bodily injury and/or death.

Similarly, although Harmening recognizes that "Owens described how just prior to firing his weapon Thomas drove aggressive straight at him," according to Harmening, because Owens failed to explain how he ultimately avoided being

---

[37] *Ferguson v. Bombardier Services Corp.*, 244 Fed Appx. 944, 949 (11th Cir. 2007).

[38] (Doc. 66-11, p. 16).

struck by Thomas' oncoming vehicle, Harmening assumes "that Owens either misperceived the vehicle's movement, or his description was a fabrication."[39] Contrary to Harmening's unsupported speculation in this regard, Owens testified that he avoided being struck by Thomas' oncoming vehicle by backpedaling toward the SW corner as it accelerated directly toward him, immediately following which he used deadly force in an effort to stop Thomas' vehicle as he fled toward the exit. There is no evidence to authorize discrediting Owens' otherwise uncontroverted testimony in favor of Harmening's speculative assumptions otherwise.

### C. Harmening's expert opinions must be excluded to the extent they are not helpful to and would mislead the jury.

Federal Rule of Evidence 702 requires that expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue."[40] To sufficiently assist the trier of fact, Harmening's expert testimony must "concern[] matters that are beyond the understanding of the average lay person."[41] "Proffered expert testimony generally will not help the trier of fact when it offers

---

[39] (Doc. 66-11, pp. 14-15).

[40] Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591.

[41] *Frazier*, 387 F.3d at 1262–63.

nothing more than what lawyers for the parties can argue in closing arguments."[42]

Other than his review of the evidence and the Goodyear surveillance video footage, which video evidence Harmening readily admits "speaks for itself" and indisputably lies within the understanding of the average lay person, Harmening does not identify any expertise used to support his interpretation of such evidence, much less his legal conclusions regarding Owens' use of force.[43] Thus, to the extent Mr. Harmening merely offers his interpretation of evidence that will be available at trial for the jury to review and interpret, and which offers nothing more than what counsel can argue in closing arguments, the same does not involve the application of any expertise to assist the jury and must be excluded.

Even assuming that Harmening's opinions involved the application of expert knowledge or expertise to assist the jury, the same should be excluded due to its minimal value at trial, if any, and the substantial likelihood that such testimony will mislead and confuse jurors at trial. Because of the "talismanic

---

[42] *Frazier*, 387 F.3d at 1262–63 (citing WEINSTEIN'S FEDERAL EVIDENCE § 702.03[2] [a]).

[43] (Doc. 66-11, p. 14; Exh. A – Harmening Depo. 89:5 to 91:12).

significance" expert testimony may have on lay jurors, trial courts must "take care to weigh the value of such evidence against its potential to mislead or confuse," and exclude any potentially prejudicial expert evidence under FRE 403.[44]

## D. Harmening's expert opinions must be excluded to the extent they state improper legal conclusions.

"While it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case, experts 'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'"[45] "Rather, the court must be the jury's only source of law, and questions of law are not subject to expert testimony."[46] "[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in

---

[44] *Frazier*, 387 F.3d at 1262–63 ("Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403.").

[45] *Commodores Entertainment Corporation v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (citing Fed. R. Evid. 704(a) and *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

[46] *Id.*

charging the jury regarding the applicable law."[47] Thus, the district court must take "adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion."[48]

Harmening's expert report is replete with inadmissible legal opinions. Allowing Harmening to testify as to these legal conclusions at trial would improperly "invade[] the court's exclusive prerogative" of being "the only source of the law," and therefore must be excluded.[49]

## IV.  **CONCLUSION**

For the reasons set forth above, these defendants respectfully pray that the grounds of their motion to exclude Mr. Harmening's expert opinions and testimony be inquired into and that said motion be sustained and granted; and

---

[47] *Id.*

[48] *Id.*

[49] *Id.*; *DeMerrell v. City of Cheboygan,* 206 F. App'x 418, 426–27 (6th Cir. 2006) (holding that expert's opinions that "it was objectively unreasonable for Officer White to shoot Mr. DeMerrell," that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that Mr. DeMerrell posed a significant threat of death or serious physical injury to the officer or others," and that the "use of deadly force by [Officer White] was improper and unnecessary," were inadmissible legal conclusions); *Hygh v. Jacobs,* 961 F.2d 359, 364 (2d Cir.1992) (precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper").

for such relief and such other and further relief as this Court deems just and proper in the circumstances.

The undersigned, in accord with L.R. 7.1 and 5.1(C) hereby certifies that the type font used herein is 13-Point Book Antiqua font.

This 11th day of February, 2019.

/s/ Dianna J. Lee
Harvey S. Gray
Georgia Bar No. 305838
Dianna J. Lee
Georgia Bar No. 163391
*Attorneys for Defendants*

GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, LLP
950 East Paces Ferry Road, NE
Salesforce Tower Atlanta – Suite 1700
Atlanta, Georgia 30326
(404) 870-7376 (Gray)
(404) 870-5955 (Lee)
(404) 870-7374 (Fax)
hgray@grsmb.com
dlee@grsmb.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day filed a copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT WILLIAM HARMENING** with the Clerk of Court using the CM/ECF system which automatically sends a service copy via email notification upon all counsel of record in the above-captioned action.

This 11th day of February, 2019.

/s/ Dianna J. Lee
Harvey S. Gray
Georgia Bar No. 305838
Dianna J. Lee
Georgia Bar No. 163391
*Attorneys for Defendants*

GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, LLP
950 East Paces Ferry Road, NE
Salesforce Tower Atlanta – Suite 1700
Atlanta, Georgia 30326
(404) 870-7376 (Gray)
(404) 870-5955 (Lee)
(404) 870-7374 (Fax)
hgray@grsmb.com
dlee@grsmb.com