**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| L.T., by her guardian, CAJUN SNORTON, as the surviving child of NICHOLAS THOMAS, and CAJUN SNORTON, as administrator of the estate of NICHOLAS THOMAS, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:17-cv-01036-WMR |
| SMYRNA POLICE LIEUTENANT KENNETH OWENS, in his individual capacity, and THE CITY OF SMYRNA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER AND JUDGMENT

The present case came before this Court on March 15, 2019 for presentation of oral argument on all pending motions in this action, including Defendant Kenneth Owens' ("Owens") Motion for Summary Judgment [Doc. 61]; Defendant City of Smyrna, Georgia's ("Smyrna") Motion for Summary Judgment [Doc. 62]; Smyrna's Motion for Partial Summary Judgment [Doc. 29]; Defendants' *Daubert* Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert William Harmening [Doc. 73]; Plaintiff's Motion to Strike and Objection Regarding

Affidavit of Donaloy Hutchins, PLS [Doc. 68]; and Plaintiff's Motion for Leave to Amend [Doc. 80].

After consideration of oral arguments presented by counsel for the parties and based upon this Court's review of the entire record herein, it is the decision of this Court that the motions for summary judgment submitted on behalf of Defendants Owens and Smyrna are well founded and should be granted, thereby terminating the present action.   As is discussed more fully below, this Court concludes that Owens' use of deadly force under the circumstances presented on March 24, 2015, was objectively reasonable as a matter of law and that the applicable law was not clearly established such that every reasonable officer in Owens' position would have understood that his use of deadly force would violate Nicholas Thomas' constitutional or other federal rights.

This Court further concludes that Smyrna's motion for partial summary judgment was subsumed in Smyrna's motion for summary judgment and is, therefore, moot.  This Court further concludes that Defendant's *Daubert* motion, Plaintiff's motion to strike Hutchins' affidavit, and Plaintiffs' motion for leave to amend the complaint are likewise moot.

## I.   <u>FINDINGS OF FACT</u>

This case arises from the shooting death of Nicholas Thomas ("Thomas") on March 24, 2015, in the parking lot of the Goodyear Tire Store located on Cumberland Parkway in Cobb County, Georgia. The shooting occurred while Owens and five other law enforcement officers were attempting to serve an outstanding arrest warrant on Thomas.  Plaintiff L.T., the surviving minor child of Thomas, through his natural mother, Cajun Snorton ("Snorton"), asserts a federal claim against Owens, and federal and state law claims against Smyrna.   In addition, Snorton, in her capacity as the administrator of Thomas' Estate, also asserts a federal claim against Owens, and federal and state law claims against Smyrna, on behalf of the estate.

The operative pleading from which all asserted claims in this case derive is Plaintiffs' First Amended Complaint (Doc. 13).  Count I alleges a federal claim against Owens, in his individual capacity, for alleged violation of Nicholas Thomas' federal rights, in part by L.T. for recovery of damages for the alleged wrongful death of her father, as his sole surviving heir, and in part by Snorton, in her representative capacity, for recovery of damages for pre-death pain and suffering and for funeral expenses.

Count II asserts a federal claim against Smyrna seeking recovery of identical damages on behalf of L.T. and Thomas' estate alleging that Smyrna was negligent in hiring and retaining Owens as a law enforcement officer solely because it entrusted him with a firearm in alleged violation of 18 U.S.C. §§ 922(g)(9) and 921(a)(33)(A) and based on what they allege is Owens' 1999 criminal conviction for domestic violence.[1]

Counts III and IV assert state law claims against Smyrna, based on vicarious liability for Owens' actions as its employee, for an alleged state law battery and alleged negligent shooting of Thomas by Owens.[2]

---

[1] This Court summarily rejects this claim on the merits.  The record is undisputed that Owens' plea in a misdemeanor domestic violence action in 1999 was entered pursuant to Georgia's First Offender Act (O.C.G.A. § 42-8-60) for which he was sentenced to probation.  The record is undisputed that Owens completed his probation, provided proof of the same to his probation officer and, hence, was never convicted of any crime.  "Whether a conviction qualifies under 18 U.S.C. § 922(g) [] . . . is 'determined in accordance with the law of the jurisdiction in which the proceedings were held.'" *U.S. v. Clarke*, 822 F.3d 1213, 1214 (11th Cir. 2016) (quoting 18 U.S.C. § 921(a) (20)); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1291 (11th Cir. 2016).

[2] On March 12, 2019, after all briefs had been submitted by the parties, after oral argument had been scheduled, two days before the oral argument hearing, and four months after discovery had expired, Plaintiffs filed a motion for leave to amend their complaint (Doc. 80) and a proposed second amended complaint (Doc. 80-1).  In said motion, Plaintiffs seek leave to assert a state law negligent hiring and retention claim against Smyrna based solely on entrusting Owens with a firearm.  This Court would not be inclined to grant said motion due to its untimeliness; however, even if such a claim had been advanced on a timely basis, summary judgment would have been granted by this Court with regard to such

On March 24, 2015, at approximately 1:45 p.m., in addition to Owens, the following five law enforcement officers arrived at the Goodyear to serve an outstanding arrest warrant on Thomas, who was an employee of Goodyear: Smyrna Police Officers Chris Graeff and Mark Cole and Cobb County Officers Bryan Moore, Daniel Mangold and Sergeant Robert Dorsey.  The warrant was issued in Clayton County for a probation violation and confirms: (a) that the probation sentence arose out of Thomas' conviction for obstruction of a law enforcement officer; (b) that "[a]ll efforts to contact [said] defendant by the probation officer have proven unsuccessful;" and (c) that Thomas was "considered absconded."

Prior to arriving at the Goodyear location to serve the arrest warrant on Thomas, Owens, as well as the other officers present, was aware of information

---

claim based on this Court's conclusion, as noted above, that Owens was not prohibited from possessing a firearm.

The record confirms beyond dispute that Owens was hired in 2001 by Smyrna as a law enforcement officer; that he has been and continues to be employed by Smyrna in this capacity; that he was formerly employed by Cobb County in a law enforcement capacity; that during his twenty-two year law enforcement career prior to the incident at issue herein, he had never before fired his weapon in the line of duty and there had never been any allegations or complaints against him by anyone alleging that he had used unlawful or excessive force.  There likewise exists no factual basis on which to conclude that entrustment of a firearm to Owens was a legal, proximate cause of any injury to or the death of Nicholas Thomas in any event. (Doc. 62-2).

reflected on the GCIC database cautioning that Thomas had violent tendencies, a history of known drug abuse, as well as a history of aggravated assault and fleeing/eluding law enforcement officers.  This information placed the officers on heightened alert that Thomas might be dangerous and unpredictable in response to their efforts to arrest him.

The record includes a true and accurate depiction of the Goodyear premises which identifies the respective cardinal directions in relation to the building. The record also includes video from four surveillance cameras located at the Goodyear premises (*See* Doc. 65).  One camera captured video from inside the business office located on the east side of the premises near the NE corner facing east (Camera I); a second camera was positioned on the SE corner facing north toward the NE corner of the building (Camera II); a third camera was positioned inside the work bays where Goodyear employees worked on customers' vehicles facing north from the south side of the bays (Camera III); and a fourth camera was located on the SW corner facing north toward the NW corner.  The shooting incident took place on the south side of the premises, near the SW corner; however, the shooting of Thomas by Owens is not captured on any of the available video. It is of significance that the off-ramp to I-285 East is located directly to the west of the Goodyear premises and was possibly accessible to Thomas by proceeding up

a slight incline with his vehicle from the north side of the building.  (*See* Doc. 62-2, at ¶ 96, Scene Photographs 015, 100, and 290).

The available video depicts a chaotic and dangerous series of events arising from Thomas' actual and threatened use of his vehicle as a deadly weapon, endangering the lives of the officers who were present, employees and customers of Goodyear, and the public at large if Thomas maneuvered his vehicle onto I-285 and escaped.  At approximately 1:45:03, Camera IV captures video of the Maserati driven by Thomas when it first appears from around the SW corner traveling north along the west side of the building and thereafter disappears around the NW corner.  The undisputed testimony in the record confirms that when Thomas turned east and rounded the NW corner, he encountered law enforcement officers on the north side of the premises, who surrounded the vehicle with guns drawn and provided multiple commands for Thomas to show his hands and exit the vehicle.[3]  Thomas did not comply; instead, he put the vehicle in reverse and the vehicle can be observed on Camera IV at approximately 1:45:26 coming around the NW corner in reverse, traveling south down the west side of the building, and coming to rest near the SW corner at approximately 1:45:33.

---

[3] The windows on the Maserati were tinted such that the officers could not see inside and did not know whether Thomas was armed.

At approximately 1:45:35 on Camera IV, Cole and Graeff can be seen coming around the NW corner on foot headed south along the west side of the building toward the Thomas vehicle.  They are in clear view by Thomas while his vehicle is at rest, and they are directly in the vehicle's path.  At approximately 1:45:36, Thomas accelerates the vehicle forward, directly toward both officers; they are able to move out of the way and the vehicle passes them and disappears around the NW corner for a second time.  Thomas' actions in this regard clearly constitute an aggravated assault with a deadly weapon such that, under applicable law, both officers were authorized to use deadly force against Thomas at that time, both to end the threat of injury to themselves and others present, and to protect the public by preventing Thomas' escape.

Once again, Thomas was met with officers who, at gunpoint, provided verbal commands for him to surrender and exit the vehicle.  Thomas ignored these commands, placed his vehicle in reverse again, and is seen on Camera IV traveling back along the west side of the building headed south from approximately 1:45:57 until the vehicle disappears around the SW corner onto the south side of the Goodyear building at approximately 1:46:04.  At 1:46:09, Owens emerges from the bays along the west side of the premises, runs south toward the SW corner, and disappears around the SW corner at 1:46:11.  Seven seconds later, at approximately

1:46:18, Coles is seen running south along the west side of the premises, with his K9 on a leash, headed toward the SW corner without his gun is drawn.

The undisputed testimony in the record confirms that Moore was positioned on the east side of the building near the SE corner; that Moore drew his weapon and provided verbal commands for Thomas to stop his vehicle as it proceeded toward him in reverse; that Thomas suddenly accelerated his vehicle toward the SW corner; that Moore then moved back to the east side of the building and ran toward the north, and that did not observe Owens fire his weapon. Moore confirms that if Thomas had continued in reverse toward him, he would have fired his weapon at Thomas.

Owens was positioned on the south side of the building near the SW corner when Thomas' vehicle accelerated forward directly at him, at which time he had to jump out of the way to avoid being struck. He also observed Cole running south toward the SW corner along the west side of the building as the Maserati was headed toward the same SW corner from the south side of the building. Owens testified that he feared that Cole would be injured, so Owens fired three shots at the vehicle. The ballistics photographs confirm that the first shot entered the front passenger window with a trajectory toward the back seat, and that the second and third shots entered the rear passenger window with a trajectory toward the

location of the driver's seat.  One shot apparently lodged in the steering wheel; the other shot was the fatal shot that struck Thomas.  These photographs confirm that Owens was positioned toward the front passenger side of the vehicle when he fired the first shot, which was followed by two more shots as the vehicle passed him.

Under the circumstances presented, and consistent with Eleventh Circuit precedent, Owens' use of deadly force under the circumstances presented was justified based on an imminent threat of bodily harm to himself, to Cole and to the other officers, to the customers and employees of Goodyear on the premises, and to the public at large should Thomas have escaped.  As such, Owens' use of deadly force was objectively reasonable as a matter of law and did not violate Thomas' rights under state or federal law.[4]

---

[4] This Court has reviewed and considered the expert testimony of William Harmening in reaching its decision in this case.  Taking the record as a whole, this Court concludes that none of the opinions offered by Mr. Harmening create any genuine issues of material fact which would alter this Court's conclusion that summary judgment is warranted in Defendants' favor. Accordingly, Defendants' *Daubert* motion is deemed moot.  Although the Court is not ruling on the merits of said motion presently, in the event this Order and Judgement is appealed and thereafter reversed and remanded for trial, Defendants may renew their motion, the substance of which will be reviewed and addressed prior to trial.

## II.   <u>CONCLUSIONS OF LAW</u>

### A. Legal Standard

To assess whether summary judgment is appropriate, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

Where such a showing is made, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party; however, the court is bound only to draw those inferences that are reasonable. *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

An "opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott,* 550 U.S. at 380, 127 S. Ct. 1769 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted). "[F]or factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. Of Educ,* 93 F.3d 739, 742 (11th Cir. 1996). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

### B. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selm*a, 884 F.3d 1093, 1098–99 (11th Cir. 2018) (quoting) (internal quotation marks and citations omitted). "To obtain qualified immunity, a public official must first show that he was engaged in a discretionary duty when the allegedly wrongful act occurred." *Hart v. Logan,* 664 F. App'x 857, 860 (11th Cir. 2016).

Because there is no dispute that Owens was acting within his discretionary authority at the time he used deadly force, Plaintiffs have the burden to establish that qualified immunity does not apply. *Id.*; *Wilson v. Miller*, 650 F. App'x 676, 681 (11th Cir. 2016) (holding that officer was acting within scope of discretionary authority when using deadly force against a suspect). To overcome qualified immunity, Plaintiffs must satisfy two prongs: "First, a plaintiff must show that a constitutional or statutory right has been violated.  Second, a plaintiff must show that the right violated was clearly established." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009); *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Avery v. Davis*, 700 F. App'x 949, 951–52 (11th Cir. 2017). Because the undisputed facts in the present case preclude Plaintiffs from satisfying either prong of the qualified immunity analysis, Owens is entitled to qualified immunity and summary judgment in his favor is appropriate under Count I.

1. **Owens' use of deadly force was objectively reasonable under the dangerous and quickly evolving circumstances confronting him.**

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Johnson*, 491 F. App'x at 951–52 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Garczynski*, 573 F.3d at 1166.  Thus, the Fourteenth Amendment has no application in this case.

"[I]n deciding the merits of a claim alleging excessive force, the court must in each case determine whether—given all the facts and circumstances of a particular case—the force used was 'reasonable' under the Fourth Amendment." *Beckman v. Hamilton*, 732 F. App'x 737, 740–41 (11th Cir. 2018); *Shaw v. City of Selma*, 884 F.3d 1093, 1099 (11th Cir. 2018) ("The reasonableness of the shooting depends on the totality of the circumstances.").  In such cases, "it is doctrinal gospel that we do not view an officer's actions with 'the 20/20 vision of hindsight,' and that [courts] make special allowance for them in 'tense, uncertain, and rapidly evolving' situations." *Shaw*, 884 F.3d at 1100–01; *Beckman*, 732 F. App'x at 741 ("We are loath to second-guess the decisions made by police officers in the field.").  "[T]he question is whether the officers' actions are 'objectively reasonable' in light

of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Thomas v. Moody,* 653 F. App'x 667, 671–72 (11th Cir. 2016).

In *Graham v. O'Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989), the Supreme Court articulated three factors to consider when evaluating whether an officer's use of deadly force was objectively reasonable under the circumstances.  "In particular, the court must consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Spencer v. City of Orlando, Fla.*, 725 F. App'x 928, 931 (11th Cir. 2018).  In the present case, all three *Graham* factors are present.  First, there is no dispute that by the time deadly force was used, there existed probable cause that Thomas had committed aggravated assault with a deadly weapon.[5]  Second, Thomas posed an imminent threat to the safety of the officers, others present at the scene, and the public at large.  Third, Thomas was both actively resisting arrest and was attempting to

---

[5] "Our precedent makes clear that under the first Graham factor—the severity of the crime at issue—we must assess the reasonableness of an officer's use of force by examining the circumstances at the time of the officer's actions, not the time of his initial encounter with the suspect." *Spencer*, 725 F. App'x at 931 (citing *Pace v. Capobianco,* 283 F.3d 1275, 1276-82 (11th Cir. 2002)); *Robinson*, 415 F.3d at 1255-56.

evade arrest by flight.  It is also undisputed that repeated warnings were provided to Thomas prior to Owens' use of deadly force and that Thomas refused to comply with each of those warnings.[6]

The Eleventh Circuit has "consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use a vehicle as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force." *Spencer v Orlando*, 725 Fed. Appx. 928 (11th Cir. 2018) (qualified immunity summary judgment entered by trial court affirmed); *Clemons v Knight*, 662 Fed. Appx. 725 (11th Cir. 2016) (qualified immunity summary judgment entered by trial court affirmed); *Thomas v Moody*, 653 Fed. Appx. 667 (11th Cir. 2016) (qualified immunity summary judgment entered by trial court affirmed); *Singletary v. Vargas*, 804 F.2d 1174 (11th Cir. 2015) (denial of qualified immunity defense by trial court reversed); *Terrell v. Smith*, 668 F.3d 945 (11th Cir. 2012)(denial of qualified immunity defense by trial court reversed); *McCullough v. Antolini*, 559 F.3d 1201 (11th Cir. 2009) (denial of qualified immunity defense by trial court reversed); *Long v. Slaton*, 508 F.3d 576 (11th Cir. 2007) (denial of qualified

---

[6] In assessing the reasonableness of an officer's use of deadly force, courts in this Circuit also consider whether a warning was provided, if feasible.  *Vaughn v. Cox*, 343 F.3d 1323, 1330 (11th Cir. 2003).

immunity defense by trial court reversed); *Robinson v Arrugueta*, 415 F.3d 1252 (11th Cir. 2005) (qualified immunity summary judgment entered by trial court affirmed); *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002) (denial of qualified immunity defense by trial court reversed).

The following general principles are established by these cases and are directly applicable in the present case.

(1)   "An action's reasonableness is judged 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'  In conducting this analysis, we must make "'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Spencer*, 725 F. App'x at 931 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989)).

(2)   "[I]t is constitutionally permissible for an officer to use deadly force when [he] 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Clemons v. Knight*, 662 F. App'x 725, 727 (11th Cir. 2016) (quoting *Carr v. Tatangelo*, 338 F.3d 1259, 1268 (11th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S.

1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), citing *Singletary*, 804 F.3d at

1181; *Robinson v. Arrugueta,* 415 F.3d 1252, 1256 (11th Cir. 2005)); *see also*

*Penley v. Eslinger*, 605 F.3d 843, 851 (11th Cir. 2010).

(3)   "An officer may use deadly force without violating the constitution

when a car that is being used as a deadly weapon threatens his life or

the life of another or presents a risk of serious bodily injury."[7] *Thomas*,

653 F. App'x at 671–72 (citing *McCullough,* 559 F.3d at 1207-08).

(4)   "Even if in hindsight the facts show that [the officers] could have

escaped unharmed ... [deadly force is justified so long as] a reasonable

officer could have perceived that [Thomas] was using [his car] as a

deadly weapon." *Spencer*, 725 F. App'x at 932 (quoting *Robinson v.*

*Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005).

(5)   "[T]he law does not require officers in a tense and dangerous situation

to wait until the moment a suspect uses a deadly weapon to act to stop

the suspect." *Spencer*, 725 F. App'x at 933 (holding that "it was not

unreasonable for the officers here to fire before Marquis — who was by

---

[7] The law in Georgia provides that a vehicle driven in a threatening manner
can be considered a deadly weapon.  *Webb v. State,* 256 Ga. App. 653, 654, 569
S.Ed.2d 596, 597 (2002) ("[O]ne who aims a motor vehicle at another person may
be convicted of aggravated assault regardless of whether the victim sustained
any injuries or was even touched by the vehicle.").

all accounts trying to restart the Hyundai—moved the car toward them") (quoting *Long v. Slaton,* 508 F.3d at 581; *Pace,* 283 F.3d at 1282 (officer's use of force reasonable even though suspect did not drive toward him at time of shooting)).

(6) "If a reasonable officer could have believed under the circumstances that [Thomas] 'posed a threat of inflicting serious injury or death' to [the officers], then 'the shooting was objectively reasonable regardless of whether [Thomas] had already committed a crime or was resisting or attempting to evade arrest.'" *Wilson v. Parker*, No. 17-15294, 2018 WL 3954222, at *2 (11th Cir. Aug. 17, 2018) (quoting *Shaw,* 884 F.3d at 1099 n. 5).

(7) "As to deadly force, a police officer may use such force to dispel a threat of serious physical harm to either the officer or others, or to prevent the escape of a suspect who threatens this harm." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) (citing *McCullough,* 559 F.3d at 1206; *Morton v. Kirkwood,* 707 F.3d 1276, 1283 (11th Cir.2013)).

Based on the foregoing, this Court concludes that Owens' decision to shoot Thomas was objectively reasonable under the circumstances; that the same is

established by the record herein as a matter of law; and that Thomas' federal rights were not violated by Owens.

### 2.  <u>The applicable law was not clearly established.</u>

Based on this Court's conclusion that Owens' use of deadly force was objectively reasonable as a matter of law, summary judgment is warranted for Owens under Count I without further discussion.  However, this Court notes that even if a Fourth Amendment violation were to be assumed, the law was not clearly established such that every officer in the circumstances presented for Owens would have known that his use of deadly force would violate Thomas' federal rights.

First, in the Eleventh Circuit, when deciding whether the law is clearly established, federal courts look only to binding precedent set forth in decisions of the United States Supreme Court, the Eleventh Circuit or the Georgia Supreme Court. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009).  Second, for the law to be clearly established, the case law relied upon must make it "sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd,* 563, U.S. 731 (2011) (emphasis added).  Third, the United States Supreme Court has cautioned Circuit Courts of Appeal in four very recent decisions that clearly established law must not be

defined at "a high level of generality," and requires case law that is "particularized" to the facts of the case. *City of Escondido, Cal. v. Emmons*, No. 17-1660, 2019 WL 113027, at *2 (Jan. 7, 2019); *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) ("Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.").

Pursuant to the standards governing clearly established law as outlined by the United States Supreme Court, the cases identified by the Plaintiffs which they contend clearly established the law simply do not apply to the circumstances presented in the instant case and, thus, do not warrant a denial of Owens' entitlement to qualified immunity for the claim asserted in Count I.

### B. The federal claim against Smyrna in Count II fails as a matter of law

Count II asserts a federal claim against Smyrna based solely on Plaintiffs' analysis of Georgia law and 18 U.S.C. §§ 922(g)(9) and 921(a)(33)(A) to support the proposition that Owens was prohibited by federal law from possessing a firearm and that Smyrna violated federal law by entrusting a firearm to Owens. This claim has no merit for the reasons discussed above and, accordingly, Smyrna is entitled

to summary judgment in connection with the claim asserted in Count II.  Likewise, even were this Court to grant Plaintiffs' motion for leave to assert a state law claim seeking damages from Smyrna for negligently entrusting a firearm to Owens, said claim would fail for these same reasons. Plaintiffs' motion for leave to amend complaint is therefore moot.

### C. The state law claims against Smyrna in Counts III and IV fail as a matter of law.

In Counts III and IV, Plaintiffs seek to recover damages from Smyrna under state law based on allegations (1) that Owens committed a state law battery of Thomas by shooting him, and (2) that Owens was negligent in shooting Thomas. Both counts are exclusively based on Smyrna's alleged vicarious liability for Owens' actions in this regard in its capacity as Owens' employer. These claims fail on their merits, and summary judgment is hereby granted with regard to Counts III and IV. As discussed above, based on the dangerous and quickly-evolving circumstances confronting Owens, he reasonably concluded that deadly force was necessary to prevent immediate death or great bodily injury.[8]  Thus, Owens' use

---

[8] At the time deadly force was used, there is no dispute that Thomas had used his vehicle as a weapon to commit several counts of aggravated assault against some or all of the officers at the scene, including Owens, and that he was fleeing and eluding the officers in conditions that placed the officers and the general public at risk of receiving serious bodily injury, both of which constitute

of deadly force was statutorily justified under O.C.G.A. § 16-3-21(a), and Plaintiffs'

state law battery claim asserted in Count III fails as a matter of law.

Plaintiffs' negligent shooting claim asserted in Count IV likewise cannot

proceed. As explained by the Eleventh Circuit, "there is no cause of action for the

negligent use of force." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th

Cir. 2009) (affirming dismissal of wrongful death claim premised on alleged

negligent use of force for failure to state a claim); *see also Spencer v. City of Orlando,*

*Fla.*, 725 F. App'x 928, 933 (11th Cir. 2018) (same). "[I]t is inapposite to allege the

negligent commission of an intentional tort, such as the use of excessive force."

*Lewis,* 561 F.3d at 1294.

## III.   <u>ORDER AND JUDGMENT</u>

For the reasons stated herein, the motions for summary judgment filed by

Defendant Owens [Doc. 61] and Defendant Smyrna [Doc. 62] are hereby

**GRANTED**, and the Court hereby enters a final judgment in favor of said

Defendants.   Defendants' motion for partial summary judgment [Doc. 29],

Defendant's *Daubert* motion [Doc. 73], Plaintiffs' motion to strike the affidavit of

---

felony offenses. O.C.G.A. § 16-5-21 (aggravated assault); O.C.G.A. § 40-6-395
(fleeing and eluding law enforcement officers).

Mr. Hutchins [Doc. 68], and Plaintiffs' motion for leave to amend the complaint

[Doc. 80] are **DENIED AS MOOT**.   Defendants are entitled to recover their costs.

IT IS SO ORDERED, this 29th day of March, 2019.

_____
WILLIAM M. RAY, II
Judge, United States District Court
Northern District of Georgia